IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## WESTERN DIVISION.

### JACKSON, APRIL TERM, 1924.

FIRST NAT. BANK OF RIPLEY *v.* C. R. BARBEE *et al.*[*]

## (*Jackson.* April Term, 1924)

1. **EVIDENCE.** General rule that written contract cannot be contradicted by parol evidence is subject to exception of defenses affecting validity.

General rule that written contract cannot be contradicted by parol evidence is subject to exceptions that it is competent to prove failure of consideration, fraud, or duress in procurement, and other defenses affecting validity thereof; but such exceptions do not extend to contradiction of written instrument. (*Post, pp.* 363, 364.)

2. **EVIDENCE.** Oral understanding that drawer of draft not to be liable held inadmissible.

In action against drawer of draft, his testimony that he signed drafts for accommodation of drawee bank, and that there was an

---

[*]On the general rule that parol evidence not admissible to vary, add to, or alter a written instrument, see note in 17 L. R. A., 270.

First Nat. Bank of Ripley v. Barbee.

oral understanding between himself and cashier of bank that he would not be liable thereon, was inadmissible, in view of Negotiable Instruments Act 1899, section 61.   (*Post, pp.* 364-368.)

Acts cited and construed:   Acts 1899, sec. 61.

Cases cited and approved:   Bank v. Busby, 120 Tenn., 652;   Alston v. Bank, 8 Tenn., Civ. App., 420;   Pharr v. Stevens, 124 Tenn., 669;   McGannon v. Ferrell, 141 Tenn., 631.

Cases cited and distinguished:   Bryan v. Duff, 12 Wash., 233;   Faux v. Fitler, 223 Pa., 568.

3. **EQUITY.** If jury properly demanded and material issue of facts submitted, court must submit such issues to jury for determination.

If a jury is properly demanded in equity suit and material issues of fact are submitted, court must submit such issues to jury for its determination.   (*Post, pp.* 368, 369.)

4. **VENUE.** Bank to which collateral delivered in trust held a ''material defendant'' in suit against drawer of draft.

In suit against drawer of draft as such, and against bank for conversion of cotton represented by receipts pledged as collateral to draft and delivered to bank in trust, bank *held* a material defendant within Shannon's Ann. Code, section 6115, authorizing suit where any material defendant is found.   (*Post, pp.* 369-371.)

5. **BANKS AND BANKING.** Lack of effort to comply with demand held a refusal.

Where bank to which receipts for cotton were delivered in trust, upon demand for their return, made no effort to comply therewith, *held*, that this amounted to a refusal, though it did not then have their possession.   (*Post, pp.* 369-371.)

Cases cited and approved:   Jackson v. Tierman, 18 Tenn., 175;   Hatcher v. Royster, 82 Tenn., 226.

Code cited and construed:   Sec. 6115 (S.).

6. **BANKS AND BANKING.** Bank refusing to deliver receipts for cotton pursuant to its trust obligation held guilty of conversion.

First Nat. Bank of Ripley v. Barbee.

Where bank agreed to hold in trust warehouse receipts covering cotton for use of another bank, and such bank demanded receipts, which demand was in legal effect refused and no proper effort was made thereafter by bank to deliver receipts pursuant to its trust obligation, it was guilty of conversion. (*Post, pp.* 371, 372.)

Cases cited and approved: Bank v. Smith, 110 Tenn., 337; Roach v. Turk, 56 Tenn., 708; McDaniel v. Adams, 87 Tenn., 758; Schwantz v. Hearn, 2 Tenn. Civ. App., 674; Pennington v. Bank, 144 Tenn., 194.

*Headnotes 1. Evidence, 22 C. J., sections 1555, 1617, 1619, 1621; 2. Evidence, 22 C. J., section 1599; 3. Equity, 21 C. J., section 721 (1926 Anno.); 4. Venue, 40 Cyc, p. 100; 5. Banks and Banking, 7 C. J., section 306; 6. Banks and Banking, 7 C. J., section 306.

## FROM LAUDERDALE.

Appeal from the Chancery Court of Lauderdale County.—Hon. V. H. Holmes, Chancellor.

Steele & Steele and J. E. Pierson, for plaintiff.

Craig, Bullock & Durham and Draper & Rice, for defendants.

Mr. Justice Chambliss delivered the opinion of the Court.

This suit was brought by the First National Bank of Ripley to recover from C. R. Barbee and First National Bank of Dyersburg $10,000, evidenced by a draft drawn by Barbee on Prince & Hubbard, cotton buyers, following the bankruptcy and failure of the drawees to honor

the draft. Barbee was alleged to be liable as drawer, and for the money advanced to him as such; while the liability of the Dyersburg Bank was based upon an alleged conversion of cotton represented by certain receipts pledged as collateral to the draft which had been delivered to the bank in trust.

Barbee defended upon the theory: (a) Of an oral agreement with the Ripley Bank contemporaneous with the drawing of the draft, of which the one sued on was a partial renewal, that he was not to be liable as drawer; (b) of the want of protest and notice of the dishonor thereof; and (c) of negligence of the bank in conserving and collecting the pledged collateral. He also by cross-bill sought to recover of the Dyersburg Bank the value of the cotton represented by the receipts alleged in the original bill to have been by it converted.

A jury trial was had upon issues tendered. After the evidence had been submitted, the chancellor, being of opinion that the issues were immaterial, dismissed the jury and decreed Barbee liable to the Ripley Bank for the amount of the draft and interest, subject to certain credits; and the Dyersburg Bank liable for the value of the cotton covered by the receipts held and converted by it, subject to certain credits. Barbee and the Dyersburg Bank have appealed.

The question for consideration, in large measure determinative here, is whether or not the issues tendered to the jury were material, the chancellor having found, and the appellee here insisting, that they were not, because some could be established only by incompetent evidence, and as to others the facts were not contro-

verted by a material quantity or degree of evidence. That is to say, that the defenses were not sustained by competent evidence as to part, or by any material evidence as to the others.

On the trial, in support of certain issues tendered, Barbee sought to prove, as already suggested, that he signed the drafts on Prince & Hubbard, payable to First National Bank of Ripley, for the accommodation of the bank, in order, for the convenience of the bank, to put the paper in shape to be discounted with the Federal Reserve Bank, and that there was an understanding and agreement between himself and the cashier of the bank that he was not to be liable thereon, but that the bank would look alone to the drawees and to the collateral cotton receipts pledged with the drafts. This contention was not only sharply controverted by the bank, but objection was made to the competency of this evidence tending to contradict the terms of the written instruments. The chancellor sustained this objection and excluded this evidence, and thereupon withdrew these issues from consideration. Errors are assigned challenging this action of the chancellor.

No decision by this court directly passing upon the specific question thus presented is cited. The general rule that a written contract cannot be contradicted by parol evidence is quite properly conceded and citation of authorities to sustain this general rule is unnecessary. Numerous exceptions, rather apparent than actual, are also well recognized, under which it is clearly competent to prove failure of consideration, fraud or duress in procurement, disability of the maker, and other defenses affecting the validity of the contract; but these

exceptions do not extend, when properly distinguished, to a contradiction of the terms of the written instrument.

In his learned and interesting treatise on Evidence at the Common Law, Prof. Thayer, of the Harvard Law School, quotes with approval an expression taken from an opinion by Lord MANSFIELD:

"The foundation is that you shall not by parol impeach a written agreement, and say that the agreement was different; but, the agreement being admitted, the party may come and show circumstances to vitiate the whole proceeding."

When tested by this statement of the rule, the applicability and the extent of the operation of all proposed exceptions will appear. Every one of the recognized exceptions involves an admission that the agreement sued on is in accordance with its written provisions, but maintains that the party whose name is signed is not bound thereon because of the existence of circumstances relieving him from liability.

We are aware of no well-considered case holding that the maker and signer of a written obligation may contradict the express terms of the writing, however numerous may be the exceptions by which he is permitted to deny his liability thereon. It seems probable that much of the confusion which has arisen on this subject is attributable to a failure to keep in mind this distinction between the right to contradict the terms of the instrument and the right to deny liability thereon.

Applying the rule as thus stated to the instant case, the only plausible ground for the insistence that the drawer of the draft may rely upon proof of an extrinsic agreement not to enforce against him the instru-

ment at all would have to be rested upon the fact that an instrument in this form does not contain in express words a promise to pay. It has been plausibly argued that this fact opens the way for admission of such evidence. For example, see the dissenting opinion of Mr. Justice Dunbar in *Bryan* v. *Duff,* 12 Wash., 233, 40 P., 936, 50 Am. St. Rep., at page 892; but it will be noted that he cites no authority, while the opinion of Chief Justice Hoyt in that case, excluding such evidence, is well sustained, both in its reasoning and by numerous authorities. The following quotation therefrom is apt and convincing:

"The first contention is founded upon the claim that the liability of the drawer grows out of a legal conclusion, which conclusion is not in writing, and that for that reason to vary or contradict such conclusion is not to vary or contradict a written instrument. In our opinion the liability of the drawer of a bill of exchange or the indorser of a note has become so well established under the rules of the law merchant and is so well understood, that the person who assumes such liability must be held to have understood the effect thereof, and by his signature to have bound himself in the same manner as he would have done had the conditions been at the time of such signature fully written out and signed by him."

Moreover, the question appears to be directly determined by the express language of our Negotiable Instruments Act of 1899, chap. 94. Therein, by section 61, it is provided as follows:

"The drawer, by drawing the instrument, admits the existence of the payee and his then capacity to indorse;

and engages that on due presentment the instrument will be accepted or paid, or both, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it. But the drawer may insert in the instrument an express stipulation negativing or limiting his own liability to the holder."

It thus appears that the legislature has unequivocally enacted that the drawer engages, by affixing his signature, to *pay the amount thereof to the holder,* if it be dishonored, after presentment and protest. It would seem to follow that evidence contradicting this explicit engagement of the drawer is inadmissible.

For Barbee, the drawer, it is insisted that *Bank* v. *Busby,* 120 Tenn., 652, 113 S. W., 390, is applicable to the contrary of this conclusion; but, as said in *Alston* v. *Bank,* 8 Tenn. Civ. App., 420, referring to *Pharr* v. *Stevens,* 124 Tenn., 669, 139 S. W., 730, the *apparent* conflict "is more apparent than real." In the Busby Case it was an indorser which was dealt with, and it was section 63 of the Negotiable Instrument Act which was construed. The *status* and implied obligation of an indorser has never been so definitely fixed under the rules of the law merchant as that of a drawer; nor is the liability of an indorser so explicitly fixed by section 63 of the act as is the liability of the drawer by section 61. A comparative analysis of the language of the two sections will justify this conclusion. The words, "is deemed to be an indorser," may well be limited as held in *Bank* v. *Busby,* without necessarily attaching a like limitation to the language contained in

section 61, "engages that . . . he will pay the amount thereof to the holder."

The case of *Faux* v. *Fitler*, 223 Pa., 568, 72 A., 891, 132 Am. St. Rep., 742, cited and quoted from counsel for Barbee, is an apt illustration of an exception to the general rule. Counsel quote from that opinion as follows:

"The controversy being between the original parties to the notes, the defendant could defeat a recovery by showing a contemporaneous parol agreement between the maker and the payee which induced the former to execute and deliver the notes, and which agreement had been violated by the payee," citing many authorities. This is a wholly different matter from a showing that the maker did not agree to pay the note, but merely permits the introduction of evidence of fraudulent representations inducing its execution. To the same effect are other authorities relied on. And the general rule of evidence as herein stated is in harmony with the well-considered opinion of Mr. Justice HALL in *McGannon* v. *Ferrell*, 141 Tenn., 631, 214 S. W., 432.

From what has been said it follows that the chancellor was not in error in excluding this testimony and withdrawing from the consideration of the jury these issues.

However, a careful consideration of the record is convincing that, with respect to the issues involving both the failure of the drawee bank to protest the draft and its handling of the collaterally pledged cotton, without any intention to suggest that the chancellor reached an erroneous conclusion on the weight of the evidence, we are unable to escape the conclusion that these issues

were material and that the evidence submitted was sufficiently controverted to require the submission of these issues to the jury. We deem it unnecessary to review in detail the testimony bearing upon either of these propositions. Whatever, as already intimated, may be the weight of the evidence, witness Barbee in detail, and with much reiteration, testifies that he did not give his assent that the draft should not be protested, and the evidence on this point of Mr. Pritchard, the cashier of the bank, is not altogether unequivocal. What has been said also applies to the evidence offered to establish a waiver by acts and statements of Barbee, following the dishonoring of the draft. The statements attributed to him by certain witnesses are at least subject to different constructions, and his own testimony on the subject tends to establish his insistence. Nor does the proof conclusively establish the insistence of counsel for the bank that Barbee was not an accommodation drawer so as to relieve the bank from the obligation to present and protest. And so with respect to the insistence of Barbee, presented here by other assignments, that, in substance, the drawee bank was negligent, or remiss, in the performance of the duty it owed to the drawer to realize upon the collateral security pledged. There is a mass of testimony, much of it controverted, bearing upon this issue.

We understand it to be practically conceded by counsel for the Ripley Bank that, if a jury is properly demanded and material issues of fact are submitted, it is the duty of the trial court to submit these issues to the jury for its determination. This is, of course, the rule. As already intimated, we find it impossible to

agree with counsel for the Ripley Bank and with the chancellor that the testimony in this case bearing upon these questions of fact was to such an extent uncontroverted as to authorize the withdrawal of these issues from the consideration of the jury, and a decision by the chancellor. If there is any material evidence to sustain the theory of the defendant submitting issues of fact, these issues must be submitted to the jury.

It results that the decree as to Barbee must be reversed and the case remanded as to him for a new trial upon proper issues, in accordance with this opinion.

The errors assigned by the appellant, First National Bank of Dyersburg, go first to the action of the chancellor in overruling a plea in abatement to the jurisdiction of the chancery court of Lauderdale county, the Dyersburg Bank being located in the county of Dyer, and having been there served with a counterpart summons. It is insisted that there is no joint liability as between Barbee and the Dyersburg Bank, one being sued as a drawer of a bill of exchange and the other for conversion. We are of opinion that the chancellor correctly disallowed the plea. We think it clear that the Dyersburg Bank was a material defendant and that the case is covered by section 6115 of Shannon's Anno. Code, as construed in *Jackson* v. *Tierman,* 10 Yerg., 175, and *Hatcher* v. *Royster,* 14 Lea, 226.

Moreover, a careful consideration of the very frank and candid testimony of Mr. John G. Latta, cashier of the Dyersburg Bank, convinces us that the action of the chancellor in withdrawing from the jury the issues of fact submitted by the Dyersburg Bank as immaterial because uncontroverted must be sustained. By these

issues it was sought to have the jury decide whether or not the Dyersburg Bank refused to deliver the warehouse receipts to the Bank of Ripley when demanded; whether the Bank of Dyersburg tendered the receipts to the Bank of Ripley within a reasonable time after demand; whether the Bank of Ripley agreed to the retention of the receipts by the Bank of New Bedford after demand had been made therefor; and whether or not the Bank of Ripley waived a tender of the receipts by their subsequent conduct after demand; also, whether or not the Bank of Ripley knew at the time of the issuance by the Bank of Dyersburg of its trust receipt that the cotton was in a warehouse in Massachusetts. With respect to the last proposition, we are inclined to the opinion that the fact is immaterial, as it is not so much a question of where the cotton was, as of the right of the Bank of Ripley to the possession of the warehouse receipts therefor, carrying with them the right of immediate possession of the cotton. As already stated, from the testimony of Mr. Latta it appears that the Bank of Dyersburg did fail and refuse to deliver the receipts when demanded, either at the time, or within a reasonable time thereafter, and that there was no agreement on the part of the Bank of Ripley that the receipts might be held subsequent to the demand therefor, and that there was no waiver on the part of the Bank of Ripley following this demand. Mr. Latta says:

"After the creditors' meeting Mr. Pritchard (cashier of the Ripley Bank) came down to our bank and made demand on me for the payment of the $10,000 draft held by the First National Bank of Ripley, which I refused."

He proceeds to say that he informed Mr. Pritchard that the cotton was up east and that the Dyersburg Bank did not have the receipts there. He says further that the bank did not send for the receipts then, nor for some time thereafter; that—

"After Mr. Pritchard made demand on our bank, . . . I made no further effort to get the warehouse receipts from the New Bedford Bank and turn them over to the First National Bank of Ripley."

He admits that prior to this time he had received by letter a demand from the Ripley Bank for these warehouse receipts, to which he had replied that he did not have possession of the receipts, but that they were in Massachusetts. It is true that Mr. Latta does make the statement that he did not "refuse to deliver them." However, it is evident that this is a deduction, or construction, of his own. We agree with the chancellor that his admitted conduct was equivalent to a refusal, and his admission that he took no steps at the time to comply with the demand is, we think, conclusive, and that there was thus no controverted question of fact on these issues. The only other issues of fact submitted were with respect to the weight and value of the cotton, and we are of opinion that there is substantial agreement in the record as to these matters.

We deem it unnecessary to discuss in fuller detail the facts. Nor is a review of the authorities deemed necessary. That the Bank of Dyersburg agreed to hold in trust the warehouse receipts covering this cotton for the use of the Bank of Ripley; that the Bank of Ripley demanded the receipts from the Dyersburg Bank and that this demand was in legal effect refused, and that

thereafter no proper effort was made by the Bank of Dyersburg to deliver these receipts pursuant to its trust obligation—establishes a case of conversion, under the authorities. *Bank* v. *Smith,* 110 Tenn., 337, 75 S. W., 1065; *Roach* v. *Turk,* 9 Heisk., 708, 24 Am. Rep., 360; *McDaniel* v. *Adams,* 87 Tenn., 758, 11 S. W., 939; *Schwantz* v. *Hearn,* 2 Tenn. Civ. App., 674; *Pennington* v. *Bank,* 144 Tenn., 194, 231 S. W., 545, 17 A. L. R., 1213.

It appears that the cotton market was rapidly falling, and this fact bears directly upon the question of reasonable time, making it imperative that the Bank of Dyersburg should have acted with all promptness following the demand made upon it.

The record further discloses that the Bank of Dyersburg received the proceeds of certain of the cotton covered by these and other trust receipts and applied these proceeds to the liquidation of the indebtedness of Prince & Hubbard to that bank, although not secured by a pledge of this cotton. However, having found with the chancellor with respect to the demand and the failure of the Dyersburg Bank to comply therewith, and holding this conduct to have constituted a conversion, we deem it unnecessary to consider this aspect of the case.

The decree of the chancellor will be affirmed as to the Bank of Dyersburg, with costs, and reversed and remanded as to appellant Barbee, as before stated.