A. E. HORN, et al. v. LEO GOODMAN, et al.

Western Section. July 11, 1925.

No petition for Certiorari was filed.

1. **Appeal and error. Setting aside pro confesso largely within discretion of chancellor.**

　　The setting aside of pro confesso is largely within the sound discretion of the chancellor.

2. **Evidence. Evidence of parol agreement not admissible to contradict a deed of trust.**

　　A parol agreement with the beneficiaries of a trust deed which would contradict the terms of the trust deed is not admissible in evidence.

3. **Evidence. Letters held admissible for purpose of impeaching testi_ony.**

In an action to set aside certain trust ᵈ ᵈs where numerous let'ers were offered to prove the debt and impeaching certain testimony in regard to the indebtedness, **held** letters competent evidence.

4. **Mortgages. A deed of trust executed on the property of mortgagor to secure the debt of another is valid.**

In an action to set aside certain deeds of trust for lack of consideration, held that a deed of trust executed on the property of the mortgagor to secure the debt of another person is an executed contract and even if the conveyance was purely voluntary, in the absence of fraud or other grounds of equity the active 'interference of a court of equity cannot be invoked to set aside the conveyance.

Appeal from Chancery Court, Shelby County; Hon. I. H. Peres, Chancellor.

Affirmed and remanded.

P. A. Rush, of Memphis, for appellant.

Canada and Williams, of Memphis, for appellee.

OWEN, J. Complainants have appealed from a decree rendered by Chancellor Israel H. Peres in the chancery court of Shelby county, Tennessee, dismissing their bill and taxing them with costs.

Complainants filed their bill in said court seeking to enjoin Leo Goodman as trustee from foreclosing three certain deeds of trust. Advertisement had been made in a Memphis paper. Goodman was the trustee in all of said deeds of trust, having been substituted for the original trustee, Dave Solinsky. All three of said trust deeds covered certain real estate in Shelby county, Tennessee, and were for the purpose of securing Levy and Solinsky, a mercantile corporation, of Nashville, Tennessee. The bill sought to enjoin the foreclosure of said three deeds of trust, and also to declare said trust deeds void on the following grounds:

First: That the indebtedness secured in the first two trust deeds had been paid.

Second: That all of said trust deeds were not supported by any consideration.

Third: That they were void for uncertainty as to the debts secured, and as to the last trust deed given there was a contemporaneous oral agreement that said trust deed should be canceled on demand of the mortagor. It appears that Horn Brothers consisting of Leo Horn, Harry Horn and Ben P. Horn, was a partnership firm, and operated two stores in Memphis, Tennessee, prior to 1920 and had operated the same for a number of years. One store was operated under the trade name of the United Clothing & Hat Company. Abraham E. Horn, one of the complainants, is a lawyer, and the son of Leo Horn of the first of Horn Brothers. The other complainant, Mrs. Rose Horn, is the wife of Harry Horn of Horn Brothers. It appears

that on November 17, 1917, Horn Brothers and United Clothing and Hat Company were both heavily indebted to the defendant Levy and Solinsky for merchandise sold to said two mercantile firms. On November 7, 1917, Harry Horn and his wife, Mrs. Rose Horn, conveyed certain real estate to secure Levy & Solinsky, securing certain indebtedness due from said firm of Horn Brothers. Likewise a second trust was given on November 20, 1918, by the said parties, and on July 2, 1920, Abraham E. Horn and Mrs. Rose Horn executed a trust deed to secure the same beneficiaries mentioned in the first and second trust deeds. Thus it will be seen that Mrs. Rose Horn conveyed real estate in all three of said trust deeds, and Abraham Horn only conveyed real estate in the last trust deed.

The defendants filed a demurrer. This demurrer was sustained, and complainant's bill was about to be dismissed when they received permission to file an amended bill. This was done. The bill was never dismissed. Defendants were given time in which to file an answer, and an answer was filed. Defendants also filed a cross-bill seeking to foreclose their three trust deeds, and denying all the material allegations of the complainants bill. Later a number of amendments were permitted to be filed to the amended bill, which had been answered. It appears that one of these amendments was not answered. Thereupon complainants took pro confesso against the defendants on the amendment. The defendants appeared and insisted that a pro confesso as to an amendment was unheard of in equity practice; however, to be safe, they filed an affidavit and asked permission to be allowed to have their answer treated as denying the allegation contained in the amendment. This was granted. Complainants excepted to the setting aside of the pro confesso. Thereupon, after their series of amendments to the bill, pro confesso was taken on one of the amendments to the bill, and the setting aside of this pro confesso on the amendment to the bill, the answer and amended answer of the defendant, the complainants took the depositions of Leo Horn, Ben P. Horn and Harry Horn of the first of Horn Brothers, and complainants A. E. Horn and Mrs. Rose Horn. The defendants took the depositions of Charles Levy, an officer of the defendant corporation, and W. H. Bailey, a bookkeeper for said firm. Numerous letters and other exhibits were filed. The cause came on to be finally heard on March 27, 1925, upon the whole record in the cause, when the chancellor decreed that all three of said trust deeds which had been attacked-were valid and existing, and complainant's bill was dismissed. It appeared further that during the pendency of this suit a certain part of the real estate conveyed by the defendants had been sold by consent and the proceeds had been paid into the registrar of the court, and these sums were orders to be paid over to the defendants and cross-complainants. Cross-complainants' bill

was sustained and the ramining part of the real estate not sold was ordered foreclosed, according to the terms of the trust deeds. The complainants excepted to the decree of the chancellor, and prayed and were granted an appeal to this court. They perfected the same, and have assigned errors in this court, as follows:

"First: The court erred in sustaining the demurrer to the amended bill, which demurrer was filed in connection with the answer on May 23, 1922.

"Second: The court erred in setting aside the pro confesso taken and entered on September 16, 1922, on the amendment to the bill which was filed on July 24, 1922.

"Third: The court erred in sustaining the exceptions filed by the defendants to the testimony of complainant's witnesses.

"Fourth: The court erred in overruling the exceptions filed by the complainants to the testimony of defendant's witness Levy and exhibits 5 to 11 to his deposition.

"Fifth: The court erred in the final decree, in holding that the ded of trust described in the bill and particularly the one of July 2, 1920, was valid and existing; in dismissing complainants' bill and all amendments thereto; in ordering the payment to defendants of all the funds derived from the sale of the property covered by said deed of trust; in ordering that defendants should have the right to proceed to foreclose the unsold property covered by said deed of trust, applying all the funds derived from the property now covered in said deed, as well as the cash referred to, to the debt of Horn Bros. to Levy & Solinsky; and in taxing all the costs of the cause against the complainants and their surety."

As to the first assignment, the complainants were not prejudiced by any action upon the demurrer. While the decree recites the demurrer was sustained, yet complainants' bill was not dismissed. Evidently complainant was ready with an amended bill at the time the demurrer was acted on, and filed with the permission of the court said amended bill, which bill was ordered to be answered. The defendants received no benefit from their demurrer, and this assignment of error is overruled.

The original bill had not alleged any fraud, and it was insisted that the trust deeds on their face showed proper consideration.

As to the second assignment, we are of opinion that the complainants were not entitled to a pro confesso because the amendment to their bill had not been answered. The defendants had a very full answer filed in the cause when this amendment was submitted. However, the setting aside of pro confesso is largely within the sound discretion of the chancellor. He saw proper to set this pro confesso aside, if the complainant had been entitled to a pro confesso. This pro confesso was set aside April 20, 1923, and on April 27, 1923, the

defendants filed an amended answer. A very lengthy amendment had been filed to the original bill on April 12, 1922. Another lengthy amendment was filed on June 9, 1922; and another amendment was filed July 24, 1922. It seems that this amendment was the one on which the pro confesso was taken, and this paper was lost, but later supplied by order of the court. in April, 1923.

The second assignment of error is overruled.

The evidence complained of by assignment No. 3, which evidence was excluded, is, complainants undertook to set up a parol agreement as to the trust deed of July 2, 1920. This proof was incompetent. Under the rulings of our Supreme Court, especially in McGammon v. Ferrell, 141 Tenn., 631; Bank v. Barbee, 150 Tenn., 355; Alston v. Bank, 8 C. C. A., page 420; Bank v. Busby, 120 Tenn., 652; Pharr v. Stevens, 124 Tenn., 669.

As a legal proposition, Abraham E. Horn could not prove a parol agreement with the beneficiaries of said trust deed, which would contradict the terms of said trust deed, but regardless of the principle of law controlling, complainants proved no oral agreement and there is no proof in the record contradicting the terms of said trust deed, and the third assignment is overruled.

The fourth assignment complains of the court admitting certain letters written by Horn Brothers and by A. E. Horn. These letters were introduced for the purpose of impeaching or contradicting certain testimony offered by Horn Brothers and A. E. Horn in regard to the indebtedness which they owed to defendants Levy & Solinsky, it being insisted by complainant that the indebtedness of Horn Brothers had been paid, we are of opinion that the letters were competent, and we copy the following letters as found in the record, from A. E. Horn, one of the complainants, which letter is dated July 11, 1921, more than a year after the execution of the trust deed by him, to secure defendants:

"ABRAHAM E. 'HORN

"ATTORNEY AT LAW

"Memphis, Tenn.

."July 11, 1921.

"Messrs. Levy and Solinsky,

"Nashville, Tenn.

"Gentlemen:—

"We are beginning to work on the big deal now pending which is to be closed in the near future and just as soon as the titles can be cleared through foreclosures or otherwise, we shall be in a position to give the new purchasers a clear deed to this claim.

"Mr. Dave Solinsky was named trustee of an instrument given to secure certain indebtedness held by Levy & Solinsky as collateral to certain accounts between Horn Brothers and Levy & Solinsky the

equity of redemption is in Rose Horn and is recorded in Book 682, page 221, in the County Registers Office, Shelby county, Tennessee.

"For the fact that Mr. Dave Solinsky does not live here and cannot conduct the foreclosure sale let me suggest that Levy & Solinsky appoint Mr. Goodman or any other person you desire to place in the stead of Dave Solinsky, who can be here to conduct the foreclosure sale in order to clear this property. Leo Goodman would be satisfactory with us and I think agreeable to you gentlemen and I am herewith enclosing a substitute of Leo Goodman as trustee for Dave Solinsky who is at present trustee of named premises.

"Kindly sign this instantly and return to Leo Goodman at your earliest convenience who inturn will foreclose the property and clear the title in order that our deal may be closed up as soon as possible. The proceeds of the sale, as you gentlemen understand, is to go to Levy & Solinsky and apply for payment of the debt which Horn Brothers owe to Levy & Solinsky.

"Yours truly,<br>"A. E. Horn,<br>"Attorney for Horn. Bros."

It appears that the firm of United Clothing & Hat Company went into bankruptcy December 27, 1921, while Horn Brothers simply sold out and quit business sometime prior to the bankruptcy proceedings. On August 13, 1920, Horn Brothers wrote the following letter to defendants:

"Phone Main 2062                          "Ben P. Horn, Mgr.
"United Clothing & Hat Co.<br>"180 South Main Street<br>"Memphis, Tenn.

"August 13, 1920.

"Messrs. Levy & Solinsky,
   "Nashville, Tennessee.
"Gentlemen:—

"Enclosed you will find notes signed aggregating $17,470.37 to cover invoices as per your statements of the 12th, less a deduction of $8.50 for merchandise returned to you sometime ago for which you failed to show a credit on your statement. You will no doubt notice that we have changed the dates of the notes as they were conflicting with other payments which we have out and are obliged to meet. Now, we trust that they will meet with your approval and that they will reach you in time to meet your requirements, we remain

"Yours very truly,<br>"H. Horn."

AEH

On July 1, 1921, Horn Brothers wrote the following letter:

"UNITED CLOTHING & HAT CO.
"180 South Main Street
"Phone Main 2062.
"Memphis, Tenn., July 14, '21:

"Messrs. Levy & Solinsky,
"112 Public Square,
"Nashville, Tennessee.

"Gentlemen:

"Relative to your communication dated July 13th will state that we thought that you understood fully the property in question which was covered by the change in trustees, from Dave Solinsky to Leo Goodman but for fear that you have forgotten we will reiterate the fact and recite the fact that this change covers lot 7, 8, 9, 10 and 11 of Block Brinkley and Snowden Subdivision. In other words, it is the batch of papers which Mr. Harry Solinsky left with Mr. Snowden when he was in Memphis sometime ago and at that time we explained to Mr. Solinsky that we had sold the property for $900 a lot cash and that he would get the proceeds of the sale upon the consummation of this deal, which we have more than once explained will be in the next 60 days.

"Trusting that you will attend to this matter at once and mail the change in trustees to either Mr. Leo Goodman or to Mr. A. E. Horn who will immediately proceed to clear the title to this property.

"Thanking you for immediate attention in this matter and extending to you our best personal regards, we remain

"Yours very truly,
"Horn Bros."

On October 6, 1921, he wrote the following letter:

"UNITED CLOTHING & HAT CO.
"180 South Main Street
"Phone Main 2062.
"Oct. 6, 1921.

"Messrs. Levy & Solinsky,
"Nashville, Tenn.

"Gentlemen:—

"ATTENTION—MR. CHAS. LEVY.

"I had a conversation with Mr. Leo Goodman and asked him if he had gotten the money for you from the Bank of Commerce that was due you and he said they hesitated in paying it over to him so I suggested to him to get this matter closed faster to have you foreclose this property you are holding trust deeds on and that would bring the settlement with the Bank of Commerce, title department

quicker to a head in which Mr. Goodman practically conceded to same.

"But he did say that he does not practice law and that would require for you to have some attorney here so he said he would write a letter to you to instruct some attorney here to go about this matter.

"Now friend Charles, I urgently request of you to give instructions to someone here to go about this matter as I know that that will be the more quicker and most profitable to you and us to get the full amount of the proceeds due us for you out of the property in question.

"Please let me hear from you of your intentions by return mail, I remain,

"Your friend,<br>"H. Horn."

HH-NF.

We think all of these letters are competent. There were many more letters from Horn Brothers acknowledging indebtedness and writing with reference to selling the property upon which defendants held a mortgage. All of these letters are competent. The fourth assignment of error is overruled.

This brings us to the fifth, and last, assignment of error, which is really the determinative question in the case, and that is, whether or not the court was in error in dismissing complainant's bill and amended bills and denying complainants any relief.

Briefly stated, the facts are, the defendant Leo Goodman was substituted as trustee for Dave Solinsky at the request of the defendant Abraham E. Horn. Levy & Solinsky, Inc., wholesale dry goods merchants at Nashville, Tennessee, for a number of years prior to December, 1921, had been selling merchandise to Horn Brothers and the United Clothing & Hat Company of Memphis, a corporation organized, owned and controlled by Horn Brothers, and doing a retail mercantile business at Memphis.

These deeds of trust were given to secure the indebtedness of Horn Brothers and the United Clothing & Hat Company to Levy & Solinsky, Inc. It is admitted by all parties in the record that, at the time this bill was filed and at the present time, Horn Brothers and the United Clothing & Hat Company owed Levy & Solinsky, Inc. at least $30,000. This is several times the value of the security covered by the deeds of trust.

The deed of trust dated November 20, 1918, was executed: "For the purpose of securing the payment of the following indebtedness to Levy & Solinsky, or the owner thereof, to-wit; a running account for merchandise owed by either Horn Brothers, Harry Horn, Ben P. Horn, Leo Horn, or a corporation known as the United Clothing &

T. A. Vol. I—7.

Hat Company, in a sum not to exceed $5,000, and for a period not to exceed five years, the purpose being to cover any amounts due for merchandise or cash advanced either now or during the period named."

The deed of trust dated July 2, 1920, was executed: "For the purpose of securing the payment of the following indebtedness to Levy & Solinsky, or the owner thereof, to-wit, an account, whether evidenced by note or not, either for merchandise or cash, by either Horn Brothers, Harry Horn, Ben P. Horn, Leo Horn, or a corporation known as the United Clothing & Hat Company in a sum not to exceed $20,000 and for a period not to exceed ten years, the purpose being to cover any amounts due for merchandise or cash advanced to the said parties named, either now or during the period within named and all renewals of the same."

It is undisputed that Levy & Solinsky sold Horn Brothers and the United Clothing & Hat Company merchandise and extended the time of payment of notes, after July 2, 1920, and on the faith of the deeds of trust. In fact, as late as July 1, 1921, the entire indebtedness of Horn Brothers and the United Clothing & Hat Company of over $30,000 was extended, on the faith of said trust deed, and the indebtedness was placed in its present form, that of promissory notes with Horn Brothers and the United Clothing & Hat Company as joint makers.

The complainants made no question as to the validity of any of these trust deeds until two days before the property advertised by the trustee for foreclosure sale, on which date they filed their original bill and procured a temporary injunction on January 21, 1922. On the morning of January 23d, the date of the sale, by agreement the sale was postponed, neither party waiving any rights, but it was agreed that should a sale be had in the future that the advertisement of same would be inserted only one time in one of the daily papers of Memphis.

It appears that Horn Brothers became insolvent and the mercantile firm of United Clothing & Hat Company, which was a trade name for Horn Brothers, had gone into bankruptcy about three weeks before this property was advertised for sale, and that this concern only paid a dividend of three per cent.

We find as a fact that the defendant corporation sold Horn Brothers and United Clothing and Hat Company merchandise after the execution of all of these trust deeds, and has sold merchandise which had not been paid for when the trust deeds were executed; that the defendants extended the time of payment of debts on the faith of these deeds of trust, and especially on the faith of the deed of trust executed by Abraham E. Horn July 24, 1920. On July 1, 1921, Horn Brothers and the United Clothing & Hat Company was indebted to

defendants in the sum of about $30,000, and this indebtedness was extended on the faith of these various trust deeds.

We find that there was no agreement between defendants to release any of the property covered by the trust deeds on demand of Mrs. Horn or A. E. Horn, except upon the payment of the indebtedness due defendants and cross-complainants, and which indebtedness was secured by these various trust deeds, and we find as a fact the property is not equal in value to the indebtedness which was secured.

In the case of Henderson v. Rice, 1 Cold., 223, our Supreme Court held with reference to a deed of trust executed on the property of the mortgagor to secure the debt of another person, that "the contract is an executed one; and even if the conveyance was purely voluntary, she cannot, in the attitude of complainant, in the absence of fraud or other ground of equity, invoke the active interference of a court of equity to set aside the conveyance. Whether or not the other party, upon the assumption of want of consideration, would be aided in enforcing the conveyance, we need not stop to inquire."

It is a well-settled principle of law, as we understand it, that one owning property, either personal or real, may pledge it for the payment of the debt of another person. If there is no debt, then there is no right to enforce the mortgage; and the matter of consideration may be inquired into for the purpose of showing that there was no debt. Such confusion as exists with respect to the right to plead and prove no consideration arises, I think, out of the failure to distinguish between the mortgage and the debt which the mortgage is given to secure. There need not be proven, and there need not exist, as we understand, it, any consideration between the mortgagor and mortgagee for the defeasible conveyance manifested by the mortgage. The mortgage itself is an executed conveyance, defeasible upon the carrying out of an executory contract." National City Bank v. Wagner, 216 Fed., 473; Perkins v. Trinity Realty Co., 69 N. J. Equity, 723.

It results that we find no error in the decree of the chancellor dismissing complainants bill and denying complainants any relief. All of the assignments of error are overruled and disallowed and the decree of the lower court is affirmed.

The cause will be remanded to the chancery court of Shelby county for the purpose of foreclosing the cross-complainant's deeds of trust and distributing the money now in the hands of the clerk and master, realized from lots heretofore sold by consent. The complainants and surety on appeal bond will pay the costs of the cause, including costs of appeal, for which execution will issue.

Clark and DeWitt, JJ., concur.