## ANDERSON v. ST. LOUIS TERMINAL WAREHOUSE CO.

### No. 10742.

United States Court of Appeals
Sixth Circuit.

March 28, 1949.

W. Wright Mitchell, of Memphis, Tenn. (Robert M. Nelson and W. Wright Mitchell, both of Memphis, Tenn., on the brief), for appellant.

Cooper Turner, Jr., of Memphis, Tenn. (Cooper Turner, Jr., of Memphis, Tenn., on the brief; Canada, Russell & Turner, of Memphis, Tenn., of counsel), for appellee.

Before HICKS, Chief Judge, and SIMONS and MILLER, Circuit Judges.

SIMONS, Circuit Judge.

The appellant complains of a judgment dismissing his action for the recovery of a bonus of $7200 which he claims was owing to him under a written employment contract. An understanding of his claim, the refusal of the appllee to pay and the action of the court in dismissing it, requires narration of somewhat involved facts.

The appellant entered the employ of the Independent Tool and Machine Company of Memphis, Tennessee, sometime in September of 1945, as a tool designer at wages of $1.50 per hour. This employment was temporary. In October of that year he was offered a position with the International Harvester Company, but declined it after a new arrangement was made with the Machine Company. He was to become superintendent in the manufacture of tricycles beginning January 1, 1946. The contract was oral and its terms are in sharp dispute. That they are important in the consideration of the instant controversy, will presently appear. According to the appellant, he was to have a salary of $15,000 a year, payable $150 a week with the balance in the form of an unconditional bonus at the end of a year. According to the appellee's contention, his salary was to be $150 a week with a bonus of $7200, payable at the end of the year if, as production superintendent, he was able to produce 300,000 tricycles during that year. That production was not achieved. The Ma-

chine Company fabricated but 116,00 tricycles, made no profits and went into bankruptcy in February, 1947.

The appellee came into the picture on or about March 1, 1946, when it entered into a contract with the Machine Company for setting up a field warehouse within the latter's plant at Memphis. It is customary in field warehousing for the operator of such business to secure the services of some responsible employee of the storing company to take charge of its warehouse operations and act as its bonded agent. Clements, President of the Machine Company, had recommended the appellant in February to act as such agent, and on March 2 the appellee entered into a contract with him to operate its field warehouse. It undertook to compensate him in accordance with the terms and conditions of his existing agreement with his then employer. His duties would require but approximately 30 minutes of his time a day, he was given certain responsibilities but was to continue to act as production superintendent of the Machine Company. His compensation was to be paid to him weekly by the Warehouse Company but only after an equivalent amount had been received from the Machine Company. For reasons not disclosed in the record, the Warehouse Company wished to make certain that the bonded agent was responsible to it as its employee even though, in final analysis, his salary came from the Machine Company.

On March 2, 1946, three written instruments were given to the appellant by the Warehouse Company. The first one was designated "Special Instructions" and to it the appellant appended his signature after a recital that he had read and thoroughly understood it. Another was designated "General Instructions" and a third "Articles of Agreement with Bonded Agent," was signed by both appellant and appellee. The paper labeled "Special Instructions" recited that the appellant had been employed by the Warehouse Company at his present salary; that payroll forms would be prepared in duplicate two days before the regular payday, and that at the time this form was mailed to the Warehouse Company the appellant would obtain a check from the storer (the Machine Company) for a like amount of his salary plus 6% to cover social security, unemployment taxes, insurance and the clerical cost for handling the payroll and salary. In the "Articles of Agreement with Bonded Agent," is the following recital: "The St. Louis Terminal Warehouse Company agrees to appoint and does hereby appoint said Norman Clinton Anderson to be its bonded agent at their Memphis, Tenn. Warehouse * * * at a salary of $150.00 per week, payable Wed. Ea. Wk. commencing Mar. 1, 1946 work week from Fri. to Thur. Bonus ($7200) at End of Year." There was also a provision that the agreement might be terminated by either party on ten days' notice in writing, or at any time by the Warehouse Company for cause without notice. Contemporaneously with the signing of the agreement the appellant applied to an indemnity company for a bond of $100,000, and in answer to the query as to what salary or compensation he would receive, replied over his signature that it would be $150.00 per week.

Late in December of 1946 the appellant advised Clements of the Machine Company that he desired to be relieved of his duties as bonded agent for the Warehouse Company, and thereafter he received a letter from the Warehouse Company stating that it wished to change agents. There is some dispute as to whether the appellant resigned or was discharged. At any rate, his contract with neither the Machine Company nor the Warehouse Company was renewed, and neither he nor they had offered to renew. Subsequently the appellant demanded payment of a bonus of $7200 from the Warehouse Company, was told that it was a matter to be taken up with the Machine Company since it had no obligation in respect to it, and upon its refusal to pay the appellant began the present suit.

The court made a specific finding that the appellant and the Independent Tool and Machine Company had entered into an oral employment agreement for the calendar year 1946, whereby the appellant was to receive a total compensation of $15,000 or 5% of the Company's net profits, whichever was greater, provided the appellant, as production superintendent, was able to manufacture as many as 300,000 tricycles; that he was to be paid at the rate of $150

per week during the period of his employment and that these payments were to be credited against the total compensation agreed upon. The balance of the compensation, namely $7200, was in the nature of a bonus and was to be paid to the appellant at the end of the ·calendar year in the event that the condition was met. It also found that the appellee in its contract of March 2, 1946 with the appellant, had agreed to compensate the appellant in accordance with the terms and conditions of that oral contract. All of the evidence bearing upon the oral agreement was objected to, and the findings based upon such evidence are here sharply challenged on the ground that they tend to change the terms of a written contract in disregard of the parol evidence rule.

It becomes necessary, therefore, to determine the precise nature of the written instruments. We assume, without sensing the necessity of detailed discussion, that Tennessee law applies the rule as it is generally understood. McGannon v. Farrell, 141 Tenn. 631, 214 S.W. 432; First Nat'l Bank of Ripley v. Barbee, 150 Tenn. 355, 265 S.W. 371; Litterer v. Wright, 151 Tenn. 210, 268 S.W. 624. Where an agreement is completely integrated in a written memorial there can be no modification of it, although ambiguous terms therein may be explained by oral evidence that illuminates the intention of the parties in the use of such terms. The parol evidence rule, however, assumes agreement upon the writing as a complete statement of the bargain. If the parties never adopted the writing as a statement of the whole agreement, the rule does not exclude parol evidence of additional promises. 3 Williston, On Contracts, § 636.

Applying these principles it is perfectly clear, upon consideration of the general and special instructions issued to the appellant contemporaneously with the written agreement and forming a part thereof, that the appellee undertook to compensate appellant for his services as bonded agent at the same rate of pay he had been receiving from the Machine Company. This the appellant thoroughly understood. He so certified in writing upon the special instructions wherein it is recited "You have been employed by the St. Louis Terminal Warehouse Company at your present salary." He also understood that while nominally employed by the Warehouse Company which, in the first instance, was to pay his salary, actually his salary was to come from money remitted for that purpose by the Machine Company to the Warehouse Company. His application for an indemnity bond recited the salary and not the bonus as an unqualified part of his compensation. Finally, if anything were wanting to demonstrate that the writing was not a complete integration of the agreement, it is the appellant's position below and the ground he stands on here. The memorial recites that he is employed by the appellee commencing March 1, 1946, with a bonus of $7200 at the end of the year. Manifestly, unless the written instrument incorporates the terms and conditions of the appellant's oral agreement with the Machine Company, the appellant has no case for his employment under the written agreement, strictly construed, began on the first of March and he left his employment, either voluntarily or at least without protest, at the end of December, at which time he still had two months to go.

[2] Consideration of these circumstances makes it clear that we must look to the terms of his employment with the Machine Company. The appellant must either stand upon the terms of the written contract, orally unamplified, in which case he has not completed the year, or he must import into it the terms of his oral agreement with his original employer. He can't have it both ways. It should also be noted that reference to the terms of compensation is in words of description rather than of obligation. The obligation undertaken by the defendant was to pay him the compensation he had been receiving from the Machine Company, and if the description of that obligation is incorrect or incomplete we have little doubt that it may be corrected or completed by consideration of the terms of the appellant's agreement with the Machine Company. The conclusion is therefore inescapable that the writing was not a complete integration of the agreement between appellant and appellee; that the

terms of his employment by the Machine Company must be looked to; that evidence bearing upon such terms is not evidence tending to vary the terms of a written contract.

The court saw and heard the witnesses and weighed their evidence. Out of it there developed a sharp controversy between the appellant, on the one hand, and Clements, President of the Machine Company, on the other. There was little, if anything, to help either side in the testimony of other witnesses. Most of it was pure hearsay. The court credited and accepted Clements' explanation of the terms of the agreement, and there are overtones which make it appear the more probable version. These include the fact that bonuses are usually, even if not always, based upon results produced and success achieved; that it does not seem probable, in the light of the appellant's previous compensation, that he would be raised in a single step to $15,000 a year by an unqualified guarantee given in advance of experience with a new article of manufacture without consideration of results. In appeals from the findings of a district judge sitting without a jury, we are obligated by Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. to give due regard to the opportunity of the trial court to judge of the credibility of witnesses, and we are commanded that findings of fact shall not be set aside unless clearly erroneous. We are not persuaded that the present findings are so erroneous as to be set aside.

Judgment affirmed.