## LOUISE HARKINS v. L. B. WELLS.

Western Section. March 13, 1931.

Petition for Certiorari denied by Supreme Court, July 1, 1931.

Wood & Brooks, of Selmer, for appellee. .
Shelton & Harbert, of Savannah, for appellant.

OWEN, J. L. B. Wells has appealed from a decree rendered in the Chancery Court of McNairy County on the 10th of September, 1930, in which the complainant was given a judgment for $2008.80. A lien was declared on a certain lot of land, it being decreed that the $2008.80 was owing for purchase money on this house and lot described in the pleadings and in the decree, and that the land be sold to pay said purchase money.

The judgment for $2008.80 was made up of $1800 principal and $208.80 interest. The complainant also sought in her bill to recover a certain list of notes and accounts that she alleged she had turned over to the defendant as agent for collection.

A reference was ordered, and the Clerk and Master was directed to report from any proof now on file, as well as any proof offered by the parties to ascertain and report:

(1) Which ones of said notes and accounts have been collected by the defendant in full, and the amount of same with any interest thereon;

(2) Which ones of said notes and accounts have been collected in part, and how much on each such item;

(3) Which ones of said notes have not been collected, nor anything collected on them, and the amounts of all such items.

After the decree was rendered, the Chancellor appointed the Clerk and Master receiver to take charge of the house and lot the complainant had sold to the defendant for a consideration of $1800, and which amount with interest she recovered in the Court below, it appearing to the Court that the defendant was insolvent and shortly

after the Court pronounced its decision, the defendant cancelled the insurance on said house.

The defendant prayed and was granted an appeal by taking the oath for poor persons and has assigned numerous errors in this Court.

The complainant is a widow; she lived in the village of Stantonville, in McNairy County. The defendant was a near neighbor. Shortly before the dealings between the complainant and the defendant, out of which this law suit arose, complainant's husband was killed. He had conducted a store at Stantonville, known as the J. P. Harkins & Company. It appears that this Company was incorporated, but complainant's husband owned all of the stock. He had become somewhat involved in debt. He owed a bank at Corinth, Mississippi, more than $4000. The complainant had signed her husband's note and he had given certain security, a trust on the house and lot involved in this law suit and had placed with said Bank a number of notes as collateral to secure a note signed by himself and his wife, the complainant. At the maturity to the Bank at Corinth, Mississippi, the trust deed on the house and lot in controversy was foreclosed and the complainant purchased the same. It appears that her husband had left his wife some life insurance and from the proceedings of this life insurance she was able to purchase the house and lot and pay the balance due the Bank, and the Bank turned over to her the collateral in the form of various notes.

The complainant, a few months after the death of her husband, decided to move to Nashville, Tennessee. She alleges that the defendant agreed to buy her house and lot, stating that he thought he could sell it for $2000 in a few months and that he would pay her $1800; and that the complainant was a woman not skilled in business affairs. It appears that shortly before the death of complainant's husband, his store had burned and the business was lost; that the defendant had stated to complainant that if she would execute a deed for the house and lot for $1800 he would pay her in the fall $1000, and that the deed should not be recorded until the $1000 was paid, and thereupon he would execute a note for $800 and a mortgage on the house and lot to secure the $800 note. The deed was executed in compliance with this agreement the latter part of June. Complainant states during the fall she spoke to the defendant about his signing the mortgage and the $800 note, that she was then ready to remove to Nashville, and that he refused to sign the note or execute the mortgage. These transactions took place during the year 1928. The house and lot had been foreclosed on April 2, 1928, and complainant filed her deed from the bank June 28, 1928. The bill in the instant case was filed January 1, 1929. It appears that the defendant filed the deed from complainant to him June 2, 1928. Complainant alleges that she turned over to the defendant for collection a number of notes and accounts set out in the bill of various

parties to whom her husband had furnished merchandise, or these parties were indebted to complainant's husband, and they were the notes and accounts she had received from the Bank of Corinth, Mississippi, when she paid the $4000 note executed by her husband and on which note she was surety; that the defendant had solicited these notes from complainant, agreeing to collect the same for a certain per centage—10% on some of them and on one or two doubtful ones she had agreed to give larger per centages; that the defendant had insisted that as complainant was moving to Nashville she would not be able to see the various makers of these notes in controversy and that he would collect them and account for the collections less his commissions. She sought a judgment for the $1800 purchase money, which she alleged had not been paid. She also sought an accounting for the notes, or to have the same returned to her if they had not been paid to the defendant. She insisted that the defendant had procured the deed by fraud; that she had confided in him and trusted him and she sought to have a lien declared or the property sold for $1800; she also alleges that the defendant was insolvent. She prayed in the alternative that if a lien could not be declared on the house and lot for $1800 and the same be subjected to her lien then that the deed be declared void for fraud and cancelled and title be decreed to complainant and that defendant be enjoined from collecting any further on said notes.

The defendant filed a demurrer to this bill, which demurrer was overruled; thereupon he filed an answer denying the material allegations of the bill and in his answer he alleged that he held two notes against the complainant and her husband at the time of the execution of said deed and the delivery of said notes to him; that the notes were for $2000 and $1200; that no sum had been paid on either one of these notes and that he and the complainant had a settlement whereby she deeded him the house and lot in controversy, which deed recites on its face, "for and in consideration of $1800 in hand paid," and that the defendant accepted the notes in controversy and $500 worth of coffins that complainant's husband had owned and that the coffins, the house and lot and the notes amounting to a little more than $1000 settled the defendant's two notes and that he turned the two notes for $2000 and $1200 over to the complainant, marking them "paid."

On the issues a large volume of proof was taken, there being seventeen depositions in the record and a number of exhibits. At the hearing, the defendant moved to amend his answer so as to plead estoppel; that is, that the complainant was estopped from denying her solemn deed wherein she had acknowledged that she had received $1800 in hand paid. This was allowed.

The defendant has assigned eighteen errors. We shall dispose of these errors in groups.

The twelfth assignment is that the court erred in overruling and disallowing the demurrer of the defendant; the thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth assignments all go to the demurrer, each separate assignment being upon some ground of said demurrer. We shall dispose of these assignments under Group 1.

The first assignment is that the Court erred in granting the complainant a judgment for the $2008.08.

The fifth assignment complains of the Court's decreeing that the complainant was entitled to the notes and accounts sued for and the sixth assignment complains of the Chancellor's ordering a reference. The seventh assignment is that the Court was in error in decreeing that the burden of proof as to whether or not the consideration was paid was on the defendant and that he had not borne this burden. The eighth assignment complains of the Chancellor's taxing costs against the defendant. The ninth and tenth assignments complain of the Court's appointing a Receiver and order a writ of possession and the eleventh assignment complains of the Court's ordering the property to be sold.

The second assignment insists that the preponderance of the proof is with the defendant and the Court erred in holding that it was with the complainant. The third assignment complains of certain testimony objected to which the Court admitted relating to certain evidence of the complainant; and the fourth assignment insists that the Court should have held that the complainant was estopped.

The defendant's demurrer contains six grounds as follows:

"1—There is no equity in the bill.

"2—The bill taken together with the deed in question executed by complainant to this defendant, shows that the full consideration was paid in cash, and that acknowledged by the complainant.

"3—If there was any fraud in the execution of said deed, and in the transactions complained of, it is shown that the complainant participated in the same, and she cannot come into this Honorable Court to correct a fraud she helped participate. No sufficient acts are shown to constitute fraud.

"4—The bill shows that the complainant is not coming into Court with clean hands.

"5—The bill shows that the bills, accounts, etc., held by this defendant and which are sought by complainant in this cause to be delivered to her, do not belong to her; that the same belongs to the J. P. Harkins & Company, a corporation, and she is seeking the same for her individual self, and it is shown she is not entitled to the same, as the widow of said Harkins, and would not be entitled to any relief under her bill.

"6—Because complainant attempts to vary or contradict a valid written agreement, a deed without having the same reformed, so as to show her contention."

We are of the opinion that the Chancellor properly overruled this demurrer. The complainant was not seeking to contradict or vary the terms of the deed. She alleged that the defendant had procured the deed after it had been signed and acknowledged by her from her through fraud, and that he agreed to hold the deed and not record it until he paid her the $1000. She alleged that no consideration had, in fact, been paid. The defendant could not raise the question as to who owned the notes of the J. P. Harkins & Company. They had been put up as collateral; had been endorsed by the J. P. Harkins Company and the complainant had paid Harkins & Company's note at the First National Bank at Corinth, Mississippi, and she was entitled to the notes as between her and the defendant if she had placed them with the defendant for collection.

The true consideration paid or promised in a deed can be shown to have been other than that received in the instrument, or the fact of payment of the consideration agreed upon may be contradicted in an action for its recovery. McGannon v. Farrell, 141 Tenn., 631, 214 S. W., 432. The fact that the complainant alleged that the consideration had not been paid does not alter or contradict the legal import of the deed. She was simply alleging the fact that the consideration had not been paid, and the statement in the face of the county and that the consideration has been paid is not a waiver of vendor's lien, if, in point of fact, payment has not been made. The recital in a deed that the consideration has been paid, like an ordinary receipt for money, is only prima facie evidence of payment and, consequently, it may be rebutted by certain proof to the contrary. Zwingle v. Wilkerson, 94 Tenn.; 246. And where a deed shows on its face that the consideration has been paid will not estop the grantor from showing the truth and that such a recital is not true in that the full consideration has not been paid. Baxter v. Washburn, 8 Lea, 16; Boshwitz v. Lawhorne, 131 Tenn., 706. In the latter case, the deed recites a consideration of $5,600 in hand paid. To secure this $5600 the grantee had executed a deed of trust. This trust deed was fatally defective. Default was made in payment. Thereupon the complainant, the vendor, filed a bill to have the land sold subject to an implied vendor's lien. Contention was upheld. The first group of assignments is overruled.

The defendant had two notes against the complainant and her husband at the time of her husband's death: one note for a little more than $600 and one for a little above $700. Both of these notes had been paid by the complainant. They had probably been renewed and at one time all the indebtedness of the complainant and her husband to the defendant was in one note. The defendant had executed a

note for $1000 to a relative of his which was signed by the complainant and her husband some time prior to this controversy—just when is not definitely fixed but probably three or four years.

We are of the opinion that this $1000 note once held by the defendant had increased to the two notes of $600 and $700.

After the death of complainant's husband, M. G. Harkins, a brother of complainant's deceased husband, whose home was in Carthage, Mississippi, who was thirty-four years of age, a live stock dealer and planter, came to complainant's home and remained there for a month or more, undertook to straighten out his deceased brother's business affairs. He had numerous conversations with the defendant. The defendant was well informed as to J. P. Harkins' business. The defendant was asked what indebtedness he held against J. P. Harkins or J. P. Harkins Company. He stated that he held two notes: one for $600 that he had pledged to the Chevrolet Automobile Company at Corinth, Mississippi, and one for $700. While this brother-in-law of the complainant was at her home and attending to his deceased brother's business affairs, the defendant procured this witness to get $100 from the complainant on said $700 note, and later the complainant, as shown by the cancelled notes and checks that she gave to the defendant and to the Chevrolet Auto Company, paid both of said two notes, and the defendant had stated repeatedly he had only two notes against complainant and her husband. He also told the witness Harkins that he held a claim for a cash register that he had loaned to the husband of complainant, and which cash register had been burned when complainant's husband's store was destroyed. We find, as a fact from a preponderance of the evidence, that at the time of the death of complainant's husband, she and her husband only owed the defendant two notes for $600 and $700, which notes the complainant paid to the defendant. We find as a fact from a preponderance of the evidence that the defendant did not pay one dollar to the complainant for said house and lot, that she was entitled to recover from him the $1800 and interest thereon. We further find by a preponderance of the weight of the evidence, that the defendant received the notes sued for as an agent undertaking to collect the same for the complainant. The defendant had procured the coffins mentioned in his answer in another manner and admitted in his testimony that the coffins did not enter into the deal or trade for the house and lot, and the notes transferred to him in satisfaction of his two alleged notes. We are of the opinion that the Chancellor was not in error in sustaining the complainant's bill.

The question of costs adjudged and the appointment of a receiver, were clearly within the discretion of the Chancellor; it does not appear that his sound discretion was abused in the taxation of costs or in the appointment of a receiver.

The evidence complained of in assignments three and four; this evidence was competent; the witness was not undertaking to contradict, vary or alter the terms of the instrument or deed, but she testified that she had not received any consideration.

The authorities cited in regard to estoppel are applicable to these assignments and they are overruled.

Lord Mansfield, many years ago, gave forth the following expression: "The foundation is that you shall not by parol impeach a written agreement, and say that the agreement was different; but the agreement being admitted, the party may come and show circumstances to vitiate the whole proceeding."—Evidence at the Common Law, Prof. Thayer.

The general rule that a written contract cannot be contradicted by parol evidence is subject to exceptions to which it is competent to prove failure of consideration, fraud, or duress in procurement, and other defenses affecting validity thereof. First National Bank of Ripley v. C. I. Barbee et al., 150 Tenn., 355, 265 S. W., 371.

The seventh assignment which complains of the Court's ruling that the burden of proof in the cause is on the defendant with respect to his paying for said house and lot and that the defendant had not borne this burden as required by law becomes immaterial as we view the case, because we hold that the complainant has borne the burden by a preponderance of the evidence. This was not a jury case; tried before the Chancellor and he found that the burden had been borne by the complainant, and as she has made out her case by a preponderance of the evidence, it is not necessary to discuss the Chancellor's opinion as to his holding that the defendant should have borne the burden. He did not bear it, but the complainant did, and all that is necessary is for the complainant to have made out the allegations of her bill by the greater weight of the evidence.

This case was very ably argued by counsel at the bar. It has presented some interesting questions. We have been furnished with some excellent briefs by counsel representing both parties; we have examined the appellant's authorities, but they can all be distinguished from the authorities we have cited in this opinion or are not applicable to the facts controlling this law suit.

It results that all the assignments of error are overruled, and disallowed. The judgment of the lower Court is affirmed. The defendant will pay the costs of this appeal, for which execution will issue. The cause will be remanded to the Chancery Court of McNairy County for the purpose of executing the reference ordered and for the purpose of receiving the Receiver's report, making a sale of the property described in the pleadings and in the decree and for all other and further orders and decrees of the Court that may be necessary in the premises.

Heiskell and Senter, JJ., concur.