306

STATE of Tennessee, ex rel. Victor S. JOHNSON, III, District Attorney General, and Elaine A. McReynolds, Commissioner of Commerce and Insurance for the State of Tennessee, Plaintiffs/Appellees,

Standard Realty & Mortgage Corporation, Shareholder/Claimant/Appellant,

v.

MOUNT OLIVET CEMETERY COMPANY, Defendant/Cross–Plaintiff Third–Party Plaintiff/Appellee.

Winston LIGON, Defendant/Cross–Defendant/Appellee

v.

FAMILY PLANNING & PROTECTION CORPORATION OF AMERICA, INC. and Doris Ligon, Third–Party Defendants/Appellants.

Court of Appeals of Tennessee, Middle Section at Nashville.

Jan. 22, 1992.

Permission to Appeal Denied by Supreme Court May 18, 1992.

Paula Godsey, Asst. Atty. Gen., Dan H. Hamm, Asst. Dist. Atty. Gen., Nashville, for plaintiffs/appellees.

Samuel L. Felker, Bass, Berry & Sims, Nashville, for appellants.

John W. Wagster, Hollins, Wagster & Yarbrough, P.C., Nashville, receiver for appellee Mt. Olivet Cemetery Co.

W. Ovid Collins, Jr., Cornelius & Collins, Nashville, guardian ad litem for Lot Owners of Mt. Olivet Cemetery Co.

Charles A. High, Jr., Bd. of Professional Responsibility, Nashville, for appellee Winston Ligon.

Cecil D. Branstetter, Branstetter, Kilgore, Stranch & Jennings, Nashville, for H. Raymond Ligon and H. Raymond Ligon, II.

Vallie C. Brooks, Sp. Litigation Asst., I.R.S., Southeast Region, Richard M. Riebeling, Stokes & Bartholomew, P.A., Nashville, for Nashville Historic Cemetery Ass'n, Inc.

## OPINION

CANTRELL, Judge.

This is a dispute over the ownership of Mt. Olivet Cemetery in Nashville. In 1990, after ten years of receivership, the trial court ordered the cemetery sold to Nashville Historical Cemetery Association, Inc. Doris Ligon, one of the appellants, asserts on appeal that she, or a company she controls, owns the cemetery and that the court should have approved her plan of rehabilitation.

### I.

Mt. Olivet, a burial ground for many of the leading families in Nashville going back to 1856, is a cemetery licensed under and controlled by the laws of the State of Tennessee. In 1979, title to the cemetery was held by the Mt. Olivet Cemetery Company, a corporation organized in 1956. Another corporation, Standard Realty and Mortgage Corporation, owned approximately 90% of the shares of Mt. Olivet. Standard Realty was, in turn, owned by Winston Ligon. Mr. Ligon was apparently the person responsible for the day-to-day operation of the cemetery.

In March of 1980, the Circuit Court of Davidson County placed the cemetery in receivership as a result of an action by John and Margaret Bradley. They alleged that they, along with numerous others, had purchased burial rights at Mt. Olivet and that the cemetery refused to honor the obligations. The corporation had not answered the complaint, filed late in 1979, and Mr. Ligon was conspicuously absent. The plaintiffs asked the court to certify the action as a class action but the court chose to appoint a receiver instead and notified the Commissioner of Commerce and Insurance, whose office oversees the operation of cemeteries.

The commissioner, through the district attorney general, filed an action in chancery on March 19, 1980 asking that a receiver be appointed because of deficiencies in the improvement care trust fund mandated by Tenn.Code Ann. § 46-2-302. Since the cemetery was already in receivership the commissioner asked that the two proceedings be consolidated. The presiding judge of the Davidson County Trial Courts designated the circuit judge hearing the *Bradley* case to hear the commissioner's complaint, and the trial judge appointed the same receiver he had appointed in *Bradley*. Although a motion was made in the commissioner's case on April 16, 1980 to consolidate the two cases, no order was ever entered having that effect.

Upon assuming his duties the receiver discovered a serious shortage in the improvement care trust fund, a claim by the Internal Revenue Service for unpaid taxes dating back to 1973, and a substantial potential liability of nearly $500,000 for pre-sold goods and services. In addition, the cemetery was poorly maintained and in disrepair. The receiver addressed the problems as funds became available but he was never able to settle the IRS claim or restore the improvement care trust fund.

In 1985, Winston Ligon sold his interest in Standard Realty to Family Planning Protective Corporation of America, a corporation owned by his former wife, Doris Ligon. Since 1985, Mrs. Ligon has been asserting ownership rights in the cemetery. At one point she sold some or all of her interest in Standard Realty to Herbert Tanner of Memphis who attempted to oust the receiver by putting the cemetery in bankruptcy. When these efforts were unsuccessful, Mrs. Ligon and/or FPPCA successfully rescinded the sale to Mr. Tanner.

On June 29, 1988, in response to a motion by the receiver, the court issued an order providing that anyone claiming an ownership interest in the cemetery must present a plan, to be approved by the court by 12:00 noon on December 31, 1988, to pay the tax deficiency and the deficiency in the improvement care trust fund. The court further ordered that if no one was able to meet the two requirements in the order then the cemetery was to be sold to the highest bidder.

On December 27, 1988, Standard Realty filed a claim asserting that it was the owner of Mt. Olivet and proposing a plan for payment of the two deficiencies. On April 20, 1989, the receiver recommended that Standard Realty's claim be rejected and on the same date requested that he be authorized to advertise and receive bids for the cemetery. On May 9, 1989, the court issued an order stating that it would proceed and consider any plans submitted for purchasing the cemetery by any interested parties. In addition, the court ordered the appointment of a guardian ad litem for the lot owners and heirs at law of those previously interred.

The court held a final hearing on July 23, 24 and 25, 1990 on the disposition of the cemetery. The court found that the sale of Standard Realty stock to FPPCA was void because it violated Tenn.Code Ann. § 46-1-107 and a restraining order was issued in 1980. The court also revoked the charter of Mt. Olivet and then turned to the question of the sale of the cemetery. The court found that the best interest of all involved would be served by accepting the offer of NHCA which proposed to immediately restore the improvement care trust fund and to pay the Internal Revenue Service.

Standard Realty and Doris Ligon filed this appeal.

## II.

Standard Realty and Mrs. Ligon argue on appeal that the trial judge erred in setting aside Winston Ligon's sale of Standard Realty to FPPCA. From a strictly legal standpoint, we agree with the appellants on this issue.

At the time of the sale in 1985, Tenn. Code Ann. § 46-1-107 provided:

Sale or transfer—Liability for funds owed to improvement care trust fund— Penalty for violation—Insolvency.—
(a)(1) When any cemetery required to be registered by this chapter is sold or the ownership is otherwise transferred, or a controlling interest in same is sold or so transferred, then the vendor or the transferor of such cemetery or interest shall remain liable for any funds that should have been deposited in the improvement care trust fund to the date of such sale or transfer, and prior to such sale or transfer, the vendor or transferor shall notify the commissioner of same, and submit to the commissioner any document or record the commissioner may require in order to demonstrate that said vendor or transferor is not indebted to the improvement care fund. After the transfer of ownership or control and the presentation of proof of currency of the improvement care fund, by the vendor or transferor, the commissioner may re-

quire the presentation of proof of the continued current status of the improvement care fund by the vendee or transferee. The state is further authorized to recover from such vendor or transferor or vendee or transferee, for the benefit of the improvement care trust fund, all sums which the vendor or transferor or vendee or transferee has not properly accounted for and paid into the trust fund, together with reasonable attorney's fees for the attorney handling such suit, said fee to be fixed and adjudged by the court hearing the case.

(2) Any vendor or transferor or vendee or transferee who violates the provisions of this section shall be guilty of a misdemeanor and shall be fined not less than one hundred dollars ($100) nor more than five hundred dollars ($500) for such violation. This penalty is in addition to the civil remedy hereinabove set out.

(b)(1) No certificate of registration shall be issued to the vendee or transferee of such cemetery until such vendee or transferee procures from the commissioner a statement that the provisions of this section have been complied with, and that vendor or transferor does not appear to be indebted to the improvement care fund; however, such statement shall not be used as evidence in any suit at law or equity or other legal proceedings, that the vendor or transferor is not in fact indebted to the improvement care trust fund.

■ A careful reading of this statute reveals that when a controlling interest in a cemetery is sold or transferred, the vendor or transferor shall notify the commissioner and the commissioner may then require proof that there is no deficiency in the improvement care trust fund. Failure to comply with the act is a misdemeanor and may result in a fine. Subsection (b)(1), the critical section in this case, provides that no certificate of registration shall be issued to the buyer as long as the commissioner is not satisfied with the condition of the improvement care trust fund. The section does not say that the commissioner or the courts may set aside or prevent a sale.

■ With respect to the certificate of registration, the buyer (FPPCA) did not ask that it be transferred. At all times, so far as the record shows, the certificate was in the name of Mt. Olivet. We are of the opinion that Tenn.Code Ann. § 46–1–107 does not provide a basis for setting aside a sale of Standard Realty to FPPCA.

The court also relied on a temporary restraining order issued early in the litigation. However, by its own terms that order expired twenty-one days after the receiver filed his first report (February 11, 1982). Moreover, what the order prevented Mt. Olivet, its officers, directors, employees, and shareholders from disposing of was the assets of the corporation. Obviously the stock in a parent company is not an asset of Mt. Olivet.

Thus, the lower court's order annulling the sale of Standard Realty to FPPCA is reversed.

### III.

The second issue raised by the appellants is the court's approval of the sale to NHCA.

Standard Realty's argument is based on its interpretation of a portion of the Cemetery Act, Tenn.Code Ann. § 46–2–312(d), which authorizes the court to order a sale of a cemetery if "it is impossible to correct the deficiency in the improvement care trust fund." Standard Realty argues that its plan, submitted in December of 1988, provides for a phased liquidation of the trust fund deficiency and a settlement of the IRS claim. Therefore, the argument continues, these facts preclude a finding that it is impossible to correct the deficiency and the only avenue available to the court was to turn the cemetery back over to the owner.

We think, however, that the appellant's argument overlooks two factors: (1) the dual nature of this receivership and (2) the fact that the "owner" of the cemetery is Mt. Olivet Cemetery Corporation, not Standard Realty, FPPCA, nor Mrs. Ligon.

■ With respect to the dual nature of the receivership, the cemetery was already in receivership when the commissioner en-

tered the picture under the statutory authority given him by the Cemetery Act. The receiver had been ordered to take control of the cemetery and to do such things as he deemed advisable for its management, care, preservation, and operation. When the receiver entered into his duties and found the cemetery suffering from serious mismanagement, unable to pay its debts as they came due, with a substantial deficiency in its improvement care fund and a staggering tax obligation, the trial judge, as a matter of general law, had the discretion to decide how the cemetery could best be preserved. *See* 66 Am.Jur.2d *Receivers* § 397. Thus, the court was not strictly bound by the technical provisions of the Cemetery Act.

■ Even if the strict provisions of the act did apply, there is no indication that the "owner", i.e., Mt. Olivet Cemetery Corporation, could possibly correct the deficiency in the improvement care fund. Throughout the history of these proceedings, stretched out now over eleven years, all the parties have treated the cemetery's real owner as a fiction. Mt. Olivet Cemetery Corporation has been largely ignored and Standard Realty, FPPCA, Winston Ligon, or Doris Ligon have been treated as the true owners. It may be that the corporate form of Mt. Olivet should be ignored, but this record does not show the facts compelling such a conclusion, and no other party has stepped up to assume the obligations that would go along with the right to assert ownership. Which of the persons or entities having an interest in the cemetery is willing to be personally responsible for the tax liability or the goods and services presold and yet to be furnished? We think the technical meaning of the term "owner" in Tenn.Code Ann. § 46–2–312(c) is the holder of the registration certificate issued by the commissioner. Mt. Olivet, the corporate holder of the certificate, has never come forward with any proposal for saving the cemetery.

It is true that Standard Realty, the parent company of the owner, made a proposal that might have justified the end of the receivership. We think, however, that where the controlling interest in the cemetery's parent company was transferred to a third party after a receiver had been appointed for the cemetery itself, the parent company and the new third party owner are strangers to the cemetery and should be treated as any other potential buyer. Therefore, all the entities seeking to purchase the cemetery stand on the same footing and the trial judge had the discretion to order the cemetery sold to the most promising bidder.

## IV.

Our conclusions with respect to the first two issues also dispose of the appellant's claim that the trial judge erred in allowing the receiver to suspend payments to the improvement care trust fund from the sale of cemetery lots and in the manner the court sought purchasers for the cemetery.

Whether the trial court had the authority to allow the receiver to suspend payments into the improvement care trust fund is immaterial at this point. The sale to NHCA provides for the infusion of fresh capital to eliminate the deficiency in the fund immediately. Neither Standard Realty nor Mrs. Ligon has any standing to complain.

In addition, if we are correct in our conclusion that Standard Realty and/or Mrs. Ligon are just like any other prospective purchasers, we fail to see how they have any complaint regarding the way the trial court sought and received bids on the cemetery. What they deserved was a fair chance to bid, and so far as the record shows, they got their chance. They do not assert that NHCA's bid was inferior to theirs; they assert that they had a preferred position. When their major premise fails, their complaint about the bidding process also fails.

## V.

■ The final issue concerns the lower court's cancellation of a judgment obtained by Winston Ligon against Mt. Olivet and subsequently assigned to FPPCA. Apparently the court's judgment was based on an agreement, worked out at the trial in July of 1990, between Winston Ligon's counsel and the receiver that, in return for a cancellation of the judgment, the receiver would not pursue any claims of Mt. Olivet against Mr. Ligon.

We think the court clearly was in error because the judgment was no longer Mr. Ligon's to barter away. He had assigned it to FPPCA three years earlier and the receiver has notice of the assignment. Thus Mr. Ligon had no right to release Mt. Olivet and the purported release could have no effect on FPPCA. *See* 6 Am.Jur.2d *Assignments* § 112.

It is true that Mt. Olivet may be able to assert any defenses or set-offs it had against Mr. Ligon against FPPCA. But the record in this case does not show that those issues were ever tried. Therefore, we reverse the part of the judgment below that cancelled the judgment of Winston Ligon against Mt. Olivet.

Except for the annulment of the sale of Standard Realty to FPPCA and the cancellation of the judgment now held by FPPCA against Mt. Olivet, the judgment of the court below is affirmed. As to those two issues the judgment is reversed and the cause is remanded for any further proceedings necessary. Tax the costs on appeal equally to Standard Realty and the receiver.

LEWIS and KOCH, JJ., concur.