IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 17, 2013 Session

## STATE OF TENNESSEE, EX REL, WILLIAM L. GIBBONS, ET AL v. CLAYTON R. SMART, ET AL

### Appeal from the Chancery Court for Shelby County
No. CH0700502     Arnold B. Goldin, Judge

---

## No. W2013-00470-COA-R3-CV - Filed November 12, 2013

---

This is an appeal from the trial court's denial of penalties and interest on *ad valorum* taxes owed by a funeral home business after the business was placed in receivership. The Appellant/Shelby County Trustee filed a claim with the Appellee/Receiver to recover delinquent taxes, penalties and interest. The trial court denied the penalties and interest, but allowed the Receiver to pay the base taxes. The Trustee appeals. Discerning no abuse of discretion, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Laura T. Kidwell, Senior Counsel, Financial Division, for appellee, State of Tennessee.

Max Shelton, Memphis, Tennessee, Receiver for Forest Hill Funeral Home and Memorial Park-East, LLC.

Gregory S. Gallagher, Memphis, Tennessee, for appellant, David Lenoir.

OPINION

On January 8, 2007, the State of Tennessee ("State"), through the Shelby County District Attorney General and the Commissioner of the Tennessee Department of Commerce and Insurance ("TDCI"), filed a complaint in the Shelby County Chancery Court against Forest Hill Funeral Home and Memorial Park-East, L.L.C. (together, "Forest Hill"), Clayton Smart, Stephen Smith, Indian Nation, L.L.C., and Redbud Tree Investments, L.L.C..[1] The lawsuit was filed as a result of audits that were conducted by the TDCI. These audits revealed substantial deficiencies in Forest Hill's statutory trust funds.[2]

Based upon the audits and other evidence filed in the trial court, the complaint alleged that Messrs. Smart and Smith had diverted or otherwise misappropriated approximately $20,000,000.00 in trust funds to the detriment of the interests of some 13,465 pre-need contract holders. Concurrent with the complaint, the State filed a motion for the appointment of a receiver for the purpose of restoring the statutory trust funds. The State also applied for a restraining order and temporary injunction against the defendants. The court granted the State's request for a restraining order.

On January 22, 2007, Messrs. Smart and Smith filed a voluntary bankruptcy petition on behalf of Forest Hill in the United States Bankruptcy Court for the Eastern District of Oklahoma. *See **In re Forest Hill Funeral Home and Memorial Park-East, L.L.C.**,* 364 B.R. 808, 815 (Bankr. E.D. Okla. 2007). Messrs. Smart and Smith also filed a motion to stay all proceedings in the Shelby County Chancery Court on the ground that Forest Hill had been placed into bankruptcy. On February 2, 2007, the trial court denied this motion and granted

---

[1] Forest Hill is comprised of three cemeteries, three funeral homes, and three mausoleums in Memphis. Forest Hill was purchased by Indian Nation, L.L.C. in December 2004. Clayton Smart owned a 95% interest in Indian Nation, and Stephen Smith owned the remaining 5% interest. At the time of the purchase, Forest Hill had been in the business of selling pre-need funeral plans for many years. Forest Hill also provided cemetery merchandise and services, and it provided for the upkeep and improvement of the cemeteries. As required by Tennessee law, Forest Hill had established trusts to satisfy its obligation to honor its pre-need contracts and cemetery merchandise and service agreements and to provide for the improvement and maintenance of the cemeteries. At the time of Indian Nation's acquisition, Forest Hill had twelve trusts to meet these obligations. The trusts were funded with approximately $29,500,000.00.

[2] Tennessee has a comprehensive scheme for regulating cemetery companies and pre-need funeral contracts. *See* Tenn. Code Ann. §§ 46-1-101, *et seq.*; Tenn. Code Ann. §§ 62-5-401, *et seq.* The statutory scheme provides for the establishment and maintenance of certain trust fund accounts and bestows enforcement power upon the Commissioner of Commerce and Insurance to seek state court relief against cemetery companies and sellers of pre-need funeral contracts when they fail to establish and maintain these trust accounts.

the State's motion for temporary injunction.  The trial court also appointed Max Shelton ("Receiver," or "Appellee") as Receiver, finding that "Plaintiffs' motion for appointment of a receiver for the trust funds of Forest Hill is . . . well founded and ought to be granted, as the Court finds that such trust funds are not part of Forest Hill's bankruptcy estate."   The Receiver was charged with tracing, recovering, and marshaling Forest Hill's trust funds wherever they might be found; to this end, the trial court authorized the Receiver to bring such actions against such persons or entities as he might deem necessary and appropriate.

On March 26, 2007, the Bankruptcy Court dismissed Forest Hill's petition, finding that it had been filed in "bad faith."  The court concluded, *inter alia*, that the pre-petition conduct of Messrs. Smart and Smith, in their capacity as acting management of Forest Hill, had been "rife with indicia of bad faith." ***In re Forest Hill Funeral Home and Memorial Park-East***, 364 B.R. at 821.[3]

Following the ruling in the Bankruptcy Court, on April 4, 2007, the Chancery Court entered an order affirming in the Receiver all authority previously granted to him in the February 2, 2007 order.  The court further directed the Receiver to take:

> exclusive custody, control and possession of all bank accounts, goods, chattels, causes of action, credits, monies, investments, stocks, shares, effects, books and records of account, other papers and property, and all interests, whether real or personal,

---

[3]  Specifically, the Bankruptcy Court observed:

> The governmental entities which regulate funerals and those who would provide them have a significant interest in seeing to it that those regulations are followed.  In this case, TDCI and the Tennessee Attorney General have a strong, perhaps even compelling, interest in seeing the Chancery Action run its course and that the conduct of Debtor and its prepetition management be properly brought to the light of day . . . .
> All of the parties have agreed that the best way to proceed with respect to this Debtor is to attempt to sell its business as a going concern. The parties also agree that any buyer must be approved by the TDCI.  It thus appears to the Court that sale of the Debtor is either a one-step process (through Chancery Action) or a two-step process (first through bankruptcy court, then to the TDCI), with the TDCI having what amounts to a veto power to any potential sale brokered in the bankruptcy case. Therefore, the best manner of sale of the business is with the blessing of the TDCI in the Chancery Action.

***In re Forest Hill Funeral Home and Memorial Park-East***, 364 B.R. at 823.

tangible or intangible, of whatever type, kind of nature owned or held by Forest Hill, with full power to sue for, collect, receive and take possession of such properties and assets and to conserve and administer them under the general supervision of the Court.

Pursuant to the foregoing order, on May 7, 2007, the Receiver filed a complaint to recover trust funds and for injunctive relief, ancillary to the State's action.[4]

From the time of his appointment, the Receiver took steps to locate and recover the statutory trust funds associated with Forest Hill. Several initial recoveries were made, and the court granted the Receiver's motions for summary judgment against several individuals who were involved in the scheme to misappropriate those funds. On April 13, 2011, a final judgment was entered against these entities in the amount of $20,832,768.70 in compensatory damages and an additional $5,000,000.00 in punitive damages. The judgment, however, was not paid. Consequently, the Receiver was faced with large trust shortfalls, which could not be offset through business operations. The record indicates that annualized losses were approximately $1,000,000.00, largely due to losses from honoring pre-need funeral and burial services contracts. Despite the shortfall, the Receiver initially kept Forest Hill open and, with the trial court's approval, moved trust funds to pay the expenses associated with honoring the pre-need contracts.

In 2011, the shortfalls persisted, and the Receiver determined that the best approach was to sell Forest Hill to a reputable operator that would agree to continue operation of the funeral homes and cemeteries, and to honor the existing pre-need contracts that remained unfulfilled. Thus, on June 8, 2011, the Receiver filed a petition to approve the sale of the assets of Forest Hill. Among other provisions, the proposed terms of the sale required the successful bidder to pay a purchase price that would be applied to partially cover remaining shortfalls in the trust funds and to post a performance bond to secure the purchaser's performance of the pre-need contracts, which had been entered into prior to the closing of the sale. In addition, the petition provided that the sale of Forest Hill's assets would be free and clear from all encumbrances, and proposed that part of the purchase price would be used to pay various claimants who had outstanding claims against Forest Hill. The petition stated that notice of the claims filing procedure would be provided to creditors by direct mailing and publication of notice. The trial court approved the Receiver's petition and exercised its

---

[4] The State's action was filed as Shelby County Chancery Court Case No. CH-07-0050-2. The Receiver's action was filed as Shelby County Chancery Court Case No. CH-07-0919-2. By Order of Consolidation, entered on August 16, 2007, the trial court consolidated the Receiver's action with the State's action.

equitable power to permit a portion of the purchase price to be set aside to make payments to various claimants, rather than requiring that all the sale proceeds be paid into the trusts.

One of the claimants was the Shelby County Trustee, David Lenoir ("Trustee," or "Appellant"), who had submitted claims to the Receiver prior to the sale. Specifically, on May 15, 2007, the Trustee filed its first notice of delinquent Shelby County tax bills on taxable property, both realty and personalty, owned by the defendants named in the State's action. The total taxes, which were allegedly owed at that time, were $96,100.27. According to the Receiver, the taxes sought by the Trustee included those owed on Forest Hill's cemetery properties, which were allegedly exempt from taxation under Tennessee Code Annotated Section 67-5-214 ("Places of burial used as such, monuments of the dead and all nonprofit cemeteries shall be exempt from taxation."). Accordingly, in 2007, the Receiver directed Forest Hill to submit an application for tax exemption to the State Board of Equalization.

On June 12, 2009, the Trustee filed an amended notice of delinquent Shelby County taxes, asserting that the total tax arrears due from Forest Hill were $156,339.02 at that time. On the same day, the trial court entered a consent order, staying the collection of any taxes, pending the Board of Equalization's ruling.

On March 9, 2010, the Trustee filed a second amended notice of delinquent taxes, claiming that the total tax owed by Forest Hill at that time was $217,052.27. Shortly after the Trustee made this filing, the Receiver submitted an appeal to the State Board of Equalization. The appeal stemmed from the reappraisal of Forest Hill by the Shelby County assessor in 2009. The 2009 appraised value of Forest Hill was substantially higher than the 2005 appraised value and allegedly did not reflect the changed circumstances at Forest Hill. Because, as noted above, the TDCI expected any purchaser to assume the liability for the outstanding pre-need contracts, the Receiver asserted that the fair market value of the funeral homes was effectively zero because millions of dollars, beyond the monies entrusted at that time, were needed to honor the contracts.

On August 13, 2010, the Receiver filed a formal response to the Trustee's claim for delinquent taxes. The Receiver informed the court and the Trustee that Forest Hill's application for tax exemption was still pending with the Board of Equalization. The response further noted that the Board of Equalization could not address the appeal of the 2009 appraisal until the exemption application was resolved. The response also specifically states that "[t]he Receiver has been actively discussing the sale of Forest Hill with prospective bidders and will develop a bid process with the approval of the Chancery Court." In addition, the Receiver's response states that:

At the appropriate time, the Receiver will petition the Court for equitable relief from all claimed penalties, interest and fees. If the Court grants the Receiver's petition for relief, the claims of the Trustee and the City are overstated insofar as it includes penalties, interest, and collection fees on delinquent tax amounts.

The Trustee filed no further response.

In June 2011, the tax exemption for the cemetery properties was granted, and the Shelby County Assessor's Office and the Receiver agreed to revised appraisals/assessments for the years 2009 to 2011. By this time, the Receiver was taking the necessary steps to sell Forest Hill. In June 2012, the Receiver sought the court's permission to pay the base real and personal property taxes owing to the Trustee, but specifically asked the court for relief from paying penalties, interest, and related charges. The Trustee filed an opposition to the Receiver's motion, and, on August 3, 2012, the Trustee submitted a third amended notice of delinquent taxes, alleging that the total tax arrearage, at that time, was $386,389.66.

The pending motions were heard on August 6, 2012. By order of August 10, 2012, the trial court granted the Receiver's motion. The order states, in relevant part:

2. The Petition for Appointment of a Receiver was granted and the Receiver was charged by the Court to trace, recover, marshal and restore the missing trust funds on behalf of the pre-need contract holders, and to continue the operations of the three Forest Hill funeral homes and cemeteries so that the pre-need funeral/burial services could be delivered to the contract holders and their beneficiaries. Accordingly, the primary purpose of the Receivership was to protect the interests of the pre-need contract holders who were victims of the fraudulent activities of Clayton Smart and his co-conspirators who misappropriated their trust funds, rather than a receivership primarily to protect the interests of the creditors of Forest Hill.

3. Because the funeral homes and cemeteries had been seriously mismanaged and operated prior to the receivership, the business was in severe financial distress, and no funds were available to pay the real and personal property taxes assessed by the City of Memphis and Shelby County and, at the same time, continue operating the funeral homes and cemeteries and honoring the

pre-need contracts as Receiver was charged with doing.

The court's order notes that "this case involves extraordinary and unique facts and circumstances and is not a typical case where a property owner is seeking to avoid a tax or has inadequate justification for relief against penalties and interest." Rather, the court noted that "this is a matter of wide public interest in that the interests of 13,500 people who purchased pre-need contracts for funeral/burial services are at stake." Accordingly, the court held that:

> (f) granting the [Receiver's] request for equitable relief [from penalties and interest] will benefit the victims of the fraud by helping to restore their pre-need trust funds, and the perpetrators of the fraud will not benefit in any way;

> (g) it has taken over five years of diligent work to get the properties in a position where they could be sold and to get to this point of requesting authority to pay the base property taxes and request equitable relief; and, the delays in getting to this point, including obtaining tax exemption for the cemeteries (over a 4 year process), getting the assessments for 2009-2011 corrected (a several year process), and other delays were not the fault of the Receiver;

> (h) Although the Receiver and the County attorney have come before the Court numerous times over the course of the receivership for Receiver to provide updates on the status of the receivership and status conferences regarding property taxes, there was no motion to compel payment, which could not have come from the trust funds that Forest Hill did not own or, given the precarious financial condition, could not come from operations without seriously impairing the ability to provide the pre-need funeral/burial services.

> 8. The Court is reluctant to use its equitable power as requested, but in this case the equities cry out for such use. Having fully considered the arguments and briefs of the parties as well as its own research, the purpose of the receivership, the public interests involved in protecting approximately 13,500 pre-need contract holders who were innocent victims of fraud resulting in their being substantially deprived of their pre-need trust funds

and the benefits of their pre-need contracts for funeral/burial services, as well as the public interest of County and City residents, and since the money that would have to be used to pay penalties, interest and related charges will instead help replenish the missing trust funds, the Court finds that the Receiver's Motion to pay the base amount of the delinquent taxes only, and not penalties, interest and related charges, is fair and equitable, and the Motion is therefore granted.

Based upon the foregoing order, the Receiver paid the Trustee the base taxes that were due on Forest Hill's property.

On September 10, 2012, the Trustee filed a motion to alter or amend the trial court's August 10, 2012 order, asking the court to reconsider its decision to grant the Receiver's request for equitable relief from paying the penalties, interest, and related charges. By order of October 31, 2012, the trial court permitted the Trustee to recoup the court costs of $378.00, which amount was reflected on its tax bill. In the October 31, 2012 order, the trial court also addressed a question that had been raised by counsel for the Trustee at the hearing on the motion to alter or amend. Specifically, the Trustee argued that because the August 10, 2012 order did not address any tax lien that the Trustee might possess, the Trustee could still enforce that lien. For the first time at the hearing on the motion to alter or amend, the Trustee argued that its lien was not extinguished by the sale order because the Trustee was not a party to the sale agreement and did not have notice of the petition to approve that agreement. In its October 31, 2012 order, the trial court clarified that it was the court's intention that the August 10, 2012 would extinguish and release any tax liens that may have existed. The court amended its August 10, 2012 order accordingly, but otherwise denied the Trustee's motion to alter or amend the judgment concerning the payment of fees, penalties, and interest on the outstanding tax amounts.

The Trustee appeals. The sole issue for review is:

Whether the trial court abused its discretion in requiring the Trustee to pay only the base property taxes assessed by Shelby County and the City of Memphis and granting equitable relief from the payment of penalties, interest, and other charges?

"A receivership is an equitable proceeding over which Chancery Court exercises substantial discretionary authority." *In re The Matter of the Liquidation of United American Bank in Knoxville, A Tennessee Corporation*, 743 S.W.2d 911 (Tenn. 1987); *see also State ex rel. Johnson v. Mount Olivet Cemetery Co.*, 834 S.W.2d 306 (Tenn. Ct. App.

1992) ("Where cemetery was in receivership and receiver had been ordered to take control of cemetery and see to its management, care, preservation, and operation, trial judge had discretion to decide how cemetery could best be preserved where cemetery had been mismanaged."). Accordingly, appellate courts review decisions made by the chancery court, in the course of administering a receivership, under an abuse of discretion standard. *See, e.g.,* ***City of Knoxville v. Hessler***, 165 S.W.2d 592 (Tenn. 1942); ***Harkins v. Wells***, 13 Tenn. App. 299, 1931 WL 1525, *6 (Tenn. Ct. App. March 13, 1931). Under the abuse of discretion standard, the trial court's decision "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." ***Camp v. Camp***, No. W2010-01037-COA-R3-CV, 2011 WL 2567542, at *5 (Tenn. Ct. App. June 29, 2011) (quoting ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001)). The abuse of discretion standard involves "a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal." ***Lee Medical, Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn.2010) (citing ***Beard v. Bd. of Prof'l Responsibility***, 288 S.W.3d 838, 860 (Tenn. 2009)). The standard "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives." ***Lee Medical, Inc.***, 312 S.W.3d at 524 (citing ***Overstreet v. Shoney's, Inc.***, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999)). Accordingly, appellate courts are not permitted to "second guess" the trial court's determinations or to substitute their judgment for that of the trial court. ***Lee Medical, Inc.***, 312 S.W.3d at 524 (citing ***White v. Vanderbilt Univ.***, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)). "The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny." ***Lee Medical***, Inc., 312 S.W.3d at 524 (citing ***Boyd v. Comdata Network, Inc.***, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002)).

The Trustee first argues that he was denied due process in these proceedings because he allegedly did not receive a copy of the Receiver's petition to sell Forest Hill, and did not receive notice of the hearing on the petition. Accordingly, the Trustee contends that his lien to collect interest, penalties, fees and costs was "stripped" by the trial court's approval of the sale agreement. However, the Trustee's brief does not raise violation of due process as a specific issue; rather, the argument is made in the body of the Trustee's brief. It is well settled that an issue is generally waived when it is argued in the body of the brief, but not designated as an issue on appeal. *See, e.g.,* ***State v. Freeman***, 402 S.W.3d 643, 653 (Tenn. Ct. App. Oct. 16, 2012) ("Generally, an issue argued in the body of the brief, but not designated as an issue will be considered waived"); ***Bunch v. Bunch***, 281 S.W.3d 406, 410 (Tenn. Ct. App. 2008); ***Childress v. Union Realty Co.***, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002). Indeed, Rule 27 of the Tennessee Rules of Appellate Procedure specifically requires that an appellant's brief "contain under appropriate headings . . . [a] statement of the issues presented for review." Tenn. R. App. P. 27(a)(4); *see also* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."). While we would normally consider the due process issue waived because it is not specifically stated, because the

Trustee's issue is so broadly worded we will exercise our discretion to address the due process argument in the interest of full adjudication of this case. However, we discourage this practice and encourage parties to always state their issues as specifically as possible in compliance with Tennessee Rule of Appellate Procedure 27(a)(4).

Concerning the fact that the Trustee did not raise the "stripping" of the "priority lien" argument until the hearing on the motion to alter or amend, at oral argument before this Court, the Trustee stated that he could not have raised the tax lien issue before this time because he did not know that the lien was in jeopardy prior to the hearing on the motion to alter or amend. However, the record simply does not support this argument. As set out above, on August 13, 2010, the Receiver filed a formal response to the Trustee's claim for delinquent taxes. The response specifically states that "[t]he Receiver has been actively discussing the sale of Forest Hill with prospective bidders and will develop a bid process with the approval of the Chancery Court." In addition, and as set out in full context above, the Receiver's response states that he will be petitioning the court for relief from the Trustee's claim for penalties, interest, and fees. The Trustee does not contend that he did not receive the Receiver's response; rather, he asserts that he did not receive notice of the petition for sale (filed June 8, 2011) and the hearing on same. Even if we assume, *arguendo*, that the Trustee did not receive notice, in June 2011, that the Receiver was petitioning the trial court for the sale of Forest Hill, the Receiver's response (filed on August 13, 2010) to the Trustee's claim clearly puts the Trustee on notice that a sale was being contemplated, and that the Receiver would seek relief from taxes and penalties. Thus, upon receipt of the Receiver's response on or about August 13, 2010, the Trustee knew, or should have know, that a sale of Forest Hill was probable, and that the Receiver would petition for relief from interest and penalties. The response was sent almost two years before the August 6, 2012 hearing on the Receiver's petition for relief from interest and penalties. From the totality of the circumstances, and the record as a whole, we can only conclude that the Trustee had sufficient time, prior to the hearing on the motion to alter or amend, to make any arguments concerning the ramifications of the sale of Forest Hill on his interests.

In addition, there is simply no evidence in the record to suggest that any lien that the Trustee might have had was extinguished, or otherwise "stripped," by the sale of Forest Hill. It is clear that the lien for delinquent taxes survived the sale because the Trustee did, in fact, recover the base taxes. In other words, the lien was transferred from Forest Hill's property to the monies received for the property. As discussed below, the trial court's decision to relieve the Receiver of paying penalties and interest was discretionary and was the result of the court's consideration of the relative equities between the parties. It was not, as the Trustee argues, a "stripping" of the lien; at most, the relief from interest and penalties was a compromise between competing interests and an attempt to satisfy the claims of as many parties as possible with insufficient funds to entirely cover all claims.

Concerning whether the trial court abused its discretion by granting the Receiver's motion to be relieved from penalties and interest on the delinquent taxes, the Trustee argues that there were sufficient funds from which these penalties and interest amounts could have been paid. Accordingly, the Trustee contends that the trial court's waiver of the penalties and interest was not warranted under the facts presented here and, thus, worked a disadvantage to county and city residents.

The instant case is similar to the case of **State ex rel. Johnson v. Mount Olivet Cemetery Co.**, 834 S.W.2d 306. In **Johnson**, this Court determined that it was within the trial court's discretion to deviate from the strict provisions of the cemetery statutes when it was necessary to preserve the cemetery. In **Johnson**, a receivership was established due to a conflict concerning the ownership rights to the cemetery and a deficiency in the cemetery's improvement care trust fund. As in the instant case, in **Johnson**, the trial court ordered the receiver to take control of the cemetery and to see to its management, care, and preservation. *Id*. at 310. One of the owners of the cemetery eventually proposed a plan for solving the financial difficulties, but the court rejected the proposed plan and ordered that the cemetery be sold. The owner appealed, asserting that the trial court abused its discretion because the cemetery statutes provided that the court is authorized to sell the cemetery only when "it is impossible to correct the deficiency in the improvement care trust fund." *Id*. at 309. On appeal, this Court affirmed the trial court's sale order, stating:

> When the receiver entered into his duties and found the cemetery suffering from serious mismanagement, unable to pay its debts as they came due, with a substantial deficiency in its improvements care trust fund and a staggering tax obligation, the trial judge, as a matter of general law, had the discretion to decide how the cemetery could best be preserved. *See* 66 Am. Jur. 2d *Receivers* §397. Thus, the court was not strictly bound by the technical provisions of the Cemetery Act.

*Id*. at 310. Likewise, while we concede that the statutes give the Trustee the right to collect penalties and interest on delinquent taxes, Tenn. Code Ann. § 67-5-2010(a)(1) ("To the amount of tax due and payable, a penalty of one half of one percent (.5%) and interest of one percent (1%) shall be added on March 1, following the tax year due date on the first day of each succeeding month."), in the receivership context, this right must be viewed in light of the equitable interests of all parties involved. Furthermore, as held in **Johnson**, in considering the equities, the trial court, in administering a receivership, is not absolutely bound by statutory provisions, but may exercise discretion to formulate the best result. Here, it is clear from the trial court's August 10, 2012 order, set out in full context above, that the trial court's decision to waive the penalties and interest in this case was based upon its desire

to advance the primary purpose of the receivership, which was to "protect, recover, and marshal those statutory trust funds . . . for the purpose of protecting the interests of the pre-need contract holders and beneficiaries. . . ." It is clear that this purpose drove the trial court's exercise of its discretion in this case. Although the Trustee's brief states that the Receiver recovered sufficient funds to cover penalties and interest on the taxes, it was obviously the trial court's goal to return as much of the recovered money as possible to the approximately 13,500 parties that had purchased pre-need contracts. To this end, the trial court had broad discretion to fashion a remedy. For example, it could have denied the Trustee the base taxes, which it did not. In this regard, the Trustee was made whole. However, it is clear from the record that the pre-need contract holders, rather than the citizens of Shelby County were the true victims of the massive fraud giving rise to this case. Given this fact, we cannot find an abuse of discretion in the trial court's remedy and in its decision to relieve the Receiver of penalties and interest on the taxes owed. By allowing base taxes and nothing more, the trial court was able to ensure that the taxes were paid, while allowing any additional funds to be returned to the pre-need contract holders. From the totality of the circumstances, this result was not illogical or unreasonable; accordingly, we conclude that there was no abuse of discretion.

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed against the Appellant, David Lenoir, in his official capacity as the Shelby County Trustee.


_____
J. STEVEN STAFFORD, JUDGE